**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

**INTRODUCTION AND AGENT BACKGROUND**

1.      I, Nicholas C. Rich, depose and make this affidavit in support of criminal complaints and requests for arrest warrants against Alexis De Leon a/k/a "Leon Leon" and Ramon De Leon, for the offenses of distribution of controlled substances and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a), and aiding and abetting the same, in violation of Title 18, United States Code, Section 2.

2.      I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and have been since February of 2008.  I am presently assigned to the Bangor, Maine, office and have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c).  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. During my employment with DEA, I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, heroin, fentanyl, methamphetamine, diverted pharmaceuticals, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I have conducted or participated in, among other things, surveillance, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of recorded conversations relating to narcotics trafficking. I have authored drug-related search warrant requests and successfully executed such warrants resulting in the seizure of drugs and other contraband, including firearms. I have also

assisted in the execution of numerous drug-related search and arrest warrants. I have received extensive training in the field of narcotics enforcement and investigations. I am very familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested arrest warrants.

## PROBABLE CAUSE

4.      The DEA, together with the Maine Drug Enforcement Agency ("MDEA") and other partner agencies, began investigating a subject known initially as "Leon Leon" and "Leon" for distributing drugs in the Bangor region. This investigation revealed that Massachusetts resident Alexis De Leon and multiple associates—including Ramon De Leon—have been using a particular Facebook Account (described for purposes of this affidavit as the "Leon Leon Account") and certain phone numbers and distributing drugs in eastern Maine.

*Background*

5.      By February of 2024, the DEA had received information regarding the Leon Leon Account being utilized by a distributor of controlled substances and had identified Alexis De Leon of the Boston area as a user of that account. The DEA had also identified a phone number ending in 3689 (hereinafter the "3689 number") as being used by Alexis De Leon for drug activity. The DEA also had information that Ramon De Leon was working with Alexis De Leon. On February 27, 2024, the DEA was receiving

2

location information from T-Mobile U.S, Inc., as to the 3689 number and observed that location information showed it traveling within Maine. Based on that location information and physical surveillance, a red Toyota Highlander was stopped by Thomas Pappas of Maine State Police, after that vehicle was observed operating over the posted speed limit. It had a female driver and two passengers, who were identified by the following identification cards: (A) Expired United States Visa for Ramon Antonio De Leon; (B) Dominican Republic identification card for Alexis Mariano De Leon. Trooper Pappas did not detect or observe any obvious contraband inside the vehicle but did observe these two male passengers had between them a very large plastic container purporting to be a container for protein powder. He did not otherwise conduct a drug-related investigation and allowed the vehicle to depart a short time after stopping it.

6.     Based on information received from various sources and legal process, the DEA came to believe that a resident of the Bangor-region (hereinafter "Jane Doe 5") was a customer of the Leon DTO. On March 29, 2024, I interviewed Jane Doe 5, who admitted to recently purchasing fentanyl from "Leon" and doing so via communications with the 3689 number.[1] Jane Doe 5 showed communications on her phone which, based on my training and experience, were consistent with her arranging purchases of controlled substances with Leon at the 3689 number. Jane Doe 5 agreed to perform a controlled purchase of controlled substances from Leon.

---

[1] Jane Doe 5 was already involved in an ongoing ATF investigation involving a seizure of drugs and guns from her property. Jane Doe 5 had previously been interviewed by the ATF in regard to that investigation and did not at that time disclose any relationship to the Leon DTO. Jane Doe 5 has a significant criminal history, including prior felony convictions in Maine for drug trafficking, thefts, and burglary.

*April 2nd Distribution of Fentanyl*

7.      On April 2, 2024, Jane Doe 5 communicated with the 3689 number and coordinated the purchase of fentanyl in the Bangor region. On that date, the ongoing GPS "ping" of the 3689 number remained in Massachusetts. However, an active GPS ping of the female driver's phone from the February 27th traffic stop traveled from Massachusetts to Bangor, Maine. Jane Doe 5 was outfitted with a covert audio and video recording device, provided serialized U.S. Currency, searched for contraband, and told to complete the agreed-upon transaction.  She communicated with the 3689 number to arrange for the transaction's terms and location. On April 2nd agents observed a Massachusetts plated vehicle arrive to Jane Doe 5's location. Agents subsequently identified the driver as the same driver of the Toyota Highlander on February 27th, described above. The passenger was Ramon De Leon. Jane Doe 5 met with Ramon De Leon and recorded the purchase of purported fentanyl powder from him. The suspected fentanyl was retrieved by agents from Jane Doe 5 and she confirmed she had completed the agreed-upon transaction.

8.      In the afternoon of April 2, 2024, agents observed this same vehicle travel to other locations in Bangor. At one location, a female Bangor resident was observed entering the back seat of the Massachusetts vehicle for a short time.[2] A short time later, the female was operating her known vehicle and a traffic stop was conducted. An officer with the Bangor Police Department located and seized approximately 51.1 grams of suspected fentanyl from the female's one passenger. The female described to agents

---

[2] This woman had previously confessed to being supplied with controlled substances by the Leon DTO.

meeting with the male she knew as "Ramon" (and identified by photograph as Ramon De Leon) prior to the traffic stop. She showed agents a conversation on her phone with the 3689 number. In my experience and training, and based on an interpretation of the messages, these messages showed this female coordinated an April 2nd purchase of drugs via communications with the 3689 number, while that number remained in Massachusetts.

9.      The suspected fentanyl from the two April 2nd events described above was later confirmed via laboratory testing to contain fentanyl.

*Replacement Phone and April 21st Distribution*

10.      On April 5, 2024, Jane Doe 5 received a message from (207) 735-9606 (the "9606 number") as follows: "Brother, how are you? I'm Leon. This is my new number, brother. I put the Maine number. It's me, Alex." At the direction of agents, Jane Doe 5 messaged the 9606 number regarding an additional purchase of fentanyl. The 9606 number responded: "All right, let me know how for when if for Monday or so." The DEA later began to receive ongoing location information from T-Mobile as to this phone.

11.      On April 18, 2024, the 9606 number messaged Jane Doe 5 and, based on my training and experience and interpretation of the messages I reviewed, advised her that he would be in Maine to deliver fentanyl on April 21, 2024. At the direction of agents, Jane Doe 5 requested to purchase another specific quantity of fentanyl for a specific price. On April 21, 2024, at approximately 7:40 a.m., information provided from T-Mobile showed the 9606 number moving from Massachusetts and towards Maine. Later that day, Jane Doe 5 conducted an audio and video recorded controlled purchase

of suspected fentanyl at a business parking lot in Newport, Maine. Specifically, the CI entered the back seat of a Honda SUV bearing a Massachusetts plate, which was registered to Alexis De Leon in Massachusetts. She described there being two males in the back seat of the SUV, which was driven by an unknown female. Jane Doe 5 described the males in the back seat area as the "brothers" she had previously purchased from, which I understood to be Ramon De Leon and Alexis De Leon. She stated she had entered the vehicle and provided the buy money to Ramon De Leon in exchange for the suspected fentanyl that she later turned over to agents. I later reviewed the video footage from this buy and identified both Alexis De Leon and Ramon De Leon as being the vehicle's rear passengers.

12. Following the controlled purchase described above, agents conducted surveillance on the Honda SUV. Based on that surveillance, Deputies with the Penobscot County Sheriff's Office initiated a traffic stop on a vehicle operated by a Male Bangor-area resident. Officers found a large clear plastic bag containing a substance that appeared to be fentanyl powder in the vehicle. This male stated he had obtained 50 grams of fentanyl from "Leon." He identified the Leon Leon Account as associated with the individual he had made this and other purchases from, and stated he recently communicated with the same individual at the 9606 number. He further stated had been purchasing fentanyl from Leon for approximately one year. He identified a photograph of Ramon De Leon as "the brother" and a photo of Alexis De Leon as "Leon." He stated that on the day of this particular stop, he had received drugs directly from Ramon and had seen Alexis De Leon in the vehicle as well. I reviewed communications on his phone and, based on my training and experience and

6

interpretation, messaging with the 9606 number showed this male had arranged for multiple purchases of fentanyl from the owner of the 9606 number, including on April 21, 2024.

13.     The suspected fentanyl involved in the April 21st events described above was later confirmed by laboratory testing to contain fentanyl.

*May 21st Distribution*

14.     On May 20, 2024, Jane Doe 5 had communications with the 9606 number at the request of agents that, in my training and experience, involved arranging another fentanyl transaction to occur on May 21, 2024, in the Bangor region. On May 21, 2024, DEA agents in Boston observed Alexis De Leon walk from his suspected residence in Massachusetts at 670 Columbia Road with a female and enter a white Honda SUV registered to Alexis De Leon. Location data on the 9606 number showed the phone then moved north and into Maine and, as the phone moved, Jane Doe 5 received an update as to Leon's timing for completing their agreed-upon transaction. Jane Doe 5 was searched, outfitted with audio/video recording devices, provided with recorded currency, and instructed to complete the agreed-upon transaction. She parked at a location in Newport and Alexis De Leon was observed by agents exiting the rear seating area of his vehicle, which was driven by a female, and entering Jane Doe 5's vehicle. He remained in her vehicle approximately two minutes and then returned to his vehicle. During this time, Jane Doe 5 later reported she had obtained approximately 100 grams of what appeared to be fentanyl powder from Alexis De Leon. She produced the suspected fentanyl powder to agents. Video from this event was later reviewed and

showed Alexis De Leon had handed Jane Doe 5 that suspected fentanyl in exchange for the pre-recorded buy money.

*June 11th Seizure*[3]

15.    Leading up to June 11, 2024, at the request of agents, Jane Doe 5 requested to purchase additional fentanyl from the Leon DTO, via communications with the 9606 number. Based on my training and experience and interpretation of those messages, I believed Alexis De Leon agreed to travel to a specific area of Maine on June 11, 2024, in order to provide Jane Doe 5 with fentanyl.

16.    On June 11, 2024, DEA agents in Boston observed that at approximately 7:30 a.m. Alexis De Leon and Ramon De Leon and an unknown female exited the basement of 670 Columbia Road in Boston and entered the white Honda SUV registered to Alexis De Leon. They were then monitored via location data on the 9606 number and a tracker installed on that vehicle pursuant to authority in the District of Massachusetts. The vehicle entered Maine and Maine State Police ultimately conducted a traffic stop of the vehicle on I-95, north of Fairfield.

17.    As a trooper approached the vehicle, it appeared to the trooper that the rear vehicle passengers were attempting to destroy a powdered substance by pouring liquid over it. Ramon De Leon and Alexis De Leon were then both removed from the rear passenger area of the vehicle and detained. A female driver was also identified and removed from the vehicle. I observed what appeared to be fentanyl powder on the rear floor of the vehicle, several plastic bags of substance that appeared to be pre-packaged

---

[3] There have been a number of other developments, warrants, controlled purchases, and suspected fentanyl seizures in this investigation that are not summarized herein.

amounts of fentanyl powder, and also a large plastic tub partially full of what appeared to be fentanyl powder. Based on my training and experience, the quantities of suspected controlled substances in the vehicle far exceeded any amount an individual might possess for personal use.[4]

18.     Alexis De Leon was Mirandized and interviewed, with the assistance of an officer fluent in Spanish. He ultimately stated that he had been bringing fentanyl to Maine for distribution since approximately August of 2023. He acknowledged the known location of his residence in Boston and that additional fentanyl would be located there. He identified the substances in the vehicle as fentanyl and crack cocaine.

19.     Ramon De Leon was Mirandized and interviewed, with the assistance of an officer fluent in Spanish. He initially claimed that he knew there were drugs in the car but stated that it all belonged to the female driver. After additional questioning, he stated he had been coming to the Bangor region to distribute drugs for multiple years. A plastic bag containing a distributor-quantity of suspected fentanyl was removed from his person as he was booked into custody.

20.     The Boston residence where Ramon and Alexis De Leon were seen leaving the morning of June 11, 2024, was searched pursuant to a warrant issued in the District of Massachusetts. Substances seized from this residence have not been tested or weighed as of this writing. However, based on information provided from agents involved in this seizure, it appears over a kilogram of suspected fentanyl powder was

---

[4] Due to the apparent attempt to destroy these controlled substances with a liquid, processing of these drugs is not complete at the time of this writing. However, based on drugs purchased previously from this organization, the controlled substances in the vehicle appear to include fentanyl powder and also cocaine-base.

seized from that residence. At least one press for pressing powdered drugs was also located.

## CONCLUSION

21.     Based on the foregoing, I submit that there is probable cause to believe, and I do believe, that Ramon De Leon did distribute controlled substances in the District of Maine on about April 2, 2024. I further believe that Ramon De Leon did distribute controlled substances in the District of Maine on about April 21, 2024, and that Alexis De Leon did aid and abet the same. I further believe that Alexis De Leon did distribute controlled substances in the District of Maine on about May 21, 2024. I believe that both subjects possessed with intent to distribute controlled substances on about June 11, 2024, in the District of Maine, and did aid and abet the same. I respectfully request that a criminal complaint be issued to support the arrests of Alexis De Leon and Ramon De Leon and to charge them with violations of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

Dated at Bangor, Maine this 12th day of June, 2024.

Nicholas Rich
Special Agent
Drug Enforcement Administration

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Jun 12 2024

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge

Printed name and title

10